FARMERS' MUTUAL FIRE INSURANCE COM-
PANY OF DUG HILL, CARROLL COUNTY, vs.
CHARLES SCHAEFFER.

*Fire Insurance—Mutual Company—Increase of Risk by Use of Steam
Engine—Notice to Insurer.*

A policy of fire insurance in a mutual company covered certain farm
buildings. On the day of the loss a portable engine was stationed
about fifty feet from a bark mill and used for grinding bark. A clause
of the policy provided that in the event of an engine being stationed
on the premises, then the president of the company should appoint
a committee of members to examine the same and ascertain if the
risk was thereby increased, and if increased an additional premium
note was to be given by the assured. More than two weeks before
the fire, when the engine was not on his premises, the plaintiff noti-
fied the general agent of the company that he used an engine for
the above mentioned purpose about once a month, and said that he
was willing to do or pay anything necessary for the protection of his
property. The agent made no definite reply and no additional pre-
mium note was demanded. *Held,* that if there was sufficient time
after the notice and before the fire for the president of the company
to ascertain through a committee whether the risk was increased by
the use of the engine, and for the plaintiff to give an additional pre-
mium note if the risk was increased, then the policy was not avoided
by the use of the engine, even if the risk was thereby increased.

Appeal from the Circuit Court for Carroll County. At
the trial below the plaintiff's (appellee's) second prayer,
granted by the Court, was as follows: Even though the jury
may find from the evidence that the use of the portable en-
gine upon the premises in the manner described in the evi-
dence materially increased the risk upon the property insured
in the policy offered in evidence, and also that the said fire
was caused, in whole or in part, by the use of said engine;
yet, nevertheless, if they shall further find that on the 17th
day of February, 1892, plaintiff notified the general agent of
the defendant company that he had been using an engine at
his tannery for the purpose of grinding bark, and that he

was desirous and willing to pay anything or do whatever might be required by said defendant company to make him safe under his policy in using said engine for said purpose, and that said fire occurred on the 27th day of February, 1892 ; and if they shall further find that said period of time elapsing between the day of said notice and the day of said fire was sufficient under all the facts and circumstances of this case, as set forth in the evidence, for the president of said defendant company to have appointed a committee of three discreet members of said company, and for said committee to have examined said premises and determine the amount of increased risk, if any, on account of said engine, and for said plaintiff to have given to said company an additional premium note for such increased risk, if so ascertained by said committee ; and shall further find that plaintiff's property was insured in the defendant company at the time of said fire, as set out in the policy of insurance offered in evidence ; and shall further find that the property of plaintiff mentioned in evidence was destroyed by fire on the 27th day of February, 1892, and that said property was included in the items mentioned in said policy of insurance ; and shall further find that plaintiff gave the notice and preliminary proofs of his loss to said defendant company on the 10th day of March, 1892, as required by said company and offered in evidence ; and shall further find that said defendant company did not pay said loss within three months after said notice and proof of loss, that then their verdict must be for the plaintiff, and the plaintiff is entitled to recover in this case.

The defendant offered eight prayers. The first declared that under the policy the use of a steam engine on the premises was prohibited ; the third was to the effect that if the engine was not on plaintiff's premises at the time of his conversation with the agent, then the jury was not at liberty to consider the same for any purpose. The fourth prayer denied plaintiff's right to recover upon the facts, unless the jury find that the defendant or its general agent had knowledge

or notice that said engine had been taken to plaintiff's premises to be employed by him in grinding bark for use in his tannery, and was on his premises at the time of said notice, or that defendant had knowledge of its being there before the day of or on the day of said fire.

*Defendant's 5th Prayer.*—If the plaintiff on the day of the fire, and at or about the time of its origin, was using a steam engine about fifty feet from his premises, whereby said insured premises were exposed to greater and materially increased risk and hazard from fire than when insured, then the plaintiff cannot recover.

*Defendant's 6th Prayer.*—If the plaintiff on the day of the fire, and at or about the time of its origin, was using and operating a portable steam engine about 50 feet from his insured premises, whereby said insured premises were exposed to greater and materially increased risk and hazard from fire than when they were insured, then the plaintiff cannot recover unless they find that an additional premium was paid or settled with the defendant by the plaintiff before so using or operating said steam engine, if they shall so find.

*Defendant's 7th Prayer.*—If the plaintiff, after the insurance contract made with the defendant as offered in evidence, used and permitted said portable steam engine within fifty feet, or thereabouts, of his insured premises ; and shall further find that, according to the by-laws and conditions, class of hazard annexed, and referred to in said policy of insurance of the table of rates offered in evidence, the said use and operation of said engine did increase the hazard or risk of loss by fire, then the plaintiff is not entitled to recover in this cause, unless the jury find that the plaintiff paid the increased premium as provided in said by-laws and table of rates, if they so find, and there is no evidence of any such payment by plaintiff.

*Defendant's 8th Prayer.*—If the jury shall find that the fire which destroyed plaintiff's buildings and property was caused from or by said locomotive or portable engine, then he cannot recover.

The Court below (ROBERTS, C. J., JONES and REVELL, JJ.), rejected all of the defendant's prayers. The jury returned a verdict for the plaintiff for $1,763.70, and from the judgment thereon defendant appealed.

The cause was argued before ROBINSON, C. J., BRYAN, McSHERRY, FOWLER, BRISCOE, and BOYD, JJ.

*James A. C. Bond* and *Charlee T. Reifsnider, Jr.* (with whom was *Charles T. Reifsnider* on the brief), for the appellant.

*George R. Gaither, Jr.*, and *Harry M. Clabaugh* (with whom was *Joseph D. Brooks* and *John M. Roberts* on the brief), for the appellee.

BRYAN, J., delivered the opinion of the Court.

This is the second appeal in this case. The opinion delivered when the first appeal was decided will be found in 80 Maryland, 563. The appellant brought an action to recover the loss which he had sustained by the destruction by fire of a bark mill and shed which belonged to him. It was not controverted that the appellee's property had been insured by the appellant (the defendant below), and it was admitted that he had sustained a loss by fire to the amount of fifteen hundred dollars. The liability of the insurance company depended on the effect upon the rights of the parties which resulted from the presence of a portable steam engine on the premises of the insured. The evidence showed that on the day of the fire this engine occupied a position between fifty and sixty feet from the bark mill of the plaintiff which was burned, and that it was used for the purpose of grinding bark; and that the plaintiff for about eighteen months before the fire had been in the habit of hiring such engines, and having them brought to his bark mill and using them for this purpose at intervals of a month or six weeks. The only conditions of insurance referring to steam engines are the sixteenth and the seventeenth. It was de-

cided on the former appeal that the sixteenth condition had no application to this case. The seventeenth is as follows : " That in the event of an engine being stationed on the premises and in close proximity to the buildings insured by this company, then, in that event, the president of the company shall appoint a committee of three discreet men, who shall be members of this company, who shall proceed forthwith to said property to make a fair and impartial examination in order to ascertain the amount of increased risk on account of said engine, and if they shall find that the risk is increased thereby, then they shall take an additional premium note for such increase, upon which the assured shall pay ten per centum at the time of the execution, and said note to be subject to the same assessments as other notes of said company, to meet losses by fire happening to property insured by this company." The evidence in the record relating to the engine varies from that presented to us on the former appeal. It was then stated that ten days before the fire occurred the plaintiff gave the general agent of the insurance company notice that he was then using the steam engine on his premises. The evidence in this record is to the effect that the engine was brought there on the twenty-sixth of February, the day before the fire. The plaintiff testified as follows in regard to notice to the general agent : " He had a conversation with Mr. Joseph Shaeffer on the 17th day of February, 1892, the day after Hull's fire, in which he told him that he did not want any trouble if he met with a loss or accident. Told him on the same day that he used an engine about once a month to grind bark at his bark mill. On the first day Shaeffer said that he did not know, and on the next day he said witness was a manufacturer. Witness told Shaeffer on same day that he wanted a permit and wanted to be made safe, and was willing to do anything to be made safe in case of an accident or loss, and was willing to pay anything and did not want any trouble if he met with a loss." Supposing this testimony to be found true by the jury, the question is

whether the plaintiff's right of recovery is defeated. It will be seen that stationing " an engine in close proximity to the buildings insured," is not made a cause of forfeiture of the policy. It gives the insurance company the right to make a fair and impartial examination for the purpose of ascertaining whether the risk of loss by fire is increased; and the right to require an additional premium note, in case such increase is found to exist.

Now, according to this testimony, the plaintiff gave the insurance company a full opportunity to exercise its rights. He informed its general agent that he was in the habit of using an engine, and that he was willing to do anything to be made safe, and to pay anything, and that he did not want any trouble if he met with a loss. There was a proffer to pay what was necessary to protect his rights under the policy; it was no fault of his that his proffer was not accepted. He might reasonably infer from the remarks of the general agent that " he did not know," and that " he (the plaintiff), was a manufacturer;" that the insurance company did not intend to exact an additional premium. At all events they did not exact one, when they had a full opportunity to do so. To be sure, the engine was not on the plaintiff's premises at the time of the notice. But the general agent was informed that it was frequently and habitually used there. This conversation took place ten days before the fire. Under the circumstunces, which we have detailed, we think that it would be unjust to the plaintiff to make an objection to the use of the engine for the first time after the loss by fire had occurred; and then to insist upon his failure to give a note for an additional premium as a cause of forfeiture.

The plaintiff's second prayer fairly left to the jury the essential questions in the case. They were required to find whether the plaintiff gave to the general agent of the insurance company the notice above mentioned; and whether after such notice a sufficient time elapsed before the fire to enable the president of the insurance company to ascertain

through the appropriate committee the amount of increased risk, if any, caused by the engine; and also to enable the plaintiff to give an additional premium note for the same, if it was found to exist. If these facts were found, the prayer asserted in effect that the policy of insurance was not vacated, even if the risk were increased by the use of the engine, and if the fire were caused, in whole or in part, by such use. We think that the Court properly granted this prayer. The jury fouhd the facts in favor of the plaintiff, and their finding settled the material questions in the case.

*Judgment affirmed.*

(Decided January 9th, 1896.)